S. R. CHEADLE, Relator, v. M. A. ROBERTS, Judge, Defendant, and W. V. SILVERS, Relator, v. M. A. ROBERTS, Judge, Defendant.

**Intoxicating liquors:** ILLEGAL SALES: CONTEMPT. Cities and towns have power to levy and collect additional mulct taxes and to adopt rules for controlling and regulating the liquor traffic; and where this power is exercised by the adoption of an ordinance providing that failure to pay the additional city tax as required therein shall work an immediate forfeiture of the resolution of consent, as in this case, a failure to pay the taxes was a forfeiture of the right to sell, and rendered all sales made thereafter a violation of an injunction ˌagainst illegal sale.

**Same:** PLACE OF SALE. Where the keeper of a mulct saloon fills telephone orders by delivery to the purchasers at their homes or places of business, and the price is collected at the place of delivery, the sale is consummated at that place rather than at the seller's place of business.

WEDNESDAY, MARCH 15, 1911.

CERTIORARI proceedings to review orders of the defendant judge finding relators guilty of a contempt of court in violating certain injunctions issued against them, restraining them from illegally selling or keeping for sale intoxicating liquors.—*Affirmed.*

*Jaques & Jaques,* for relators.

*W. W. Rankin,* for defendant.

DEEMER, J.—Relators were each enjoined from selling

or keeping for sale intoxicating liquors contrary to law at any place within the Second Judicial District of Iowa; the decree against Silvers being entered January 4, 1902, and the one against Cheadle on the 14th day of January of the same year. Thereafter and on January 3, 1910, an information and affidavit was filed, charging each of said relators with contempt of court in violating the said injunctional decrees. Thereafter and on February 15, 1910, these informations were amended, and, each of the defendants having appeared and answered, a hearing was had on said informations, and the trial court made the following findings of fact:

Second. That during the time the sale was made and of the transaction involved, in this hearing for contempt the defendant had complied with all the provisions of the mulct law, so far as the petition of consent, consent of the city council, list of employees, and payment of the tax due the county was concerned, but that he had not complied with the city ordinance relative to the payment of a tax to the city. Third. That the building in which defendants' business is carried on is not such as is required by the statute, in that the business was not conducted in a single room; and, further, that the building had more than one opening, which was used by the defendants in the conduct of their business. Fourth. That on one occasion the defendants permitted a minor named Halstead to enter said place of business and take therefrom intoxicating liquors, which he delivered to the purchaser for the defendants. Fifth. That obscene pictures were distributed from defendants' said place of business, but that they were not displayed while in said place of business, except in so far as to take them temporarily from the envelope in which they were inclosed long enough to permit the person to whom they were delivered to see what they were. Sixth. That the defendant sold liquors by filling orders that were telephoned in from persons operating mulct saloons, and delivered the intoxicating liquors so ordered to the saloon where ordered, and received payment therefor at the place of delivery. Seventh. That the

defendants likewise received orders at their place of business from individuals telephoning from their 'homes, and delivered intoxicating liquors so ordered to the homes of such parties, and collected therefor at the place of delivery. In view of said facts I conclude that each defend-. ant has' violated said injunction, and that he should be fined the sum of four hundred dollars and costs, including an attorney's fee of $125, and that an order of abatement shall issue as provided for in Code, section No. 2408.

The material parts of the city ordinance referred to in the trial court's findings read as follows:

The resolution of consent provided for in section one of this ordinance is granted and given to said applicant upon the express condition that he shall in all respects faithfully observe all the conditions and restrictions provided by said Code of 1897 of Iowa, and amendments thereto, and such restrictions as may be enacted by the Legislature, or by the city council by resolution or ordinance governing the traffic in and the sale of intoxicating liquors.

Sec. .3.    The resolution of consent above provided for shall be issued to the applicants upon the express condition that he shall pay all taxes provided by law, and especially chapter 6, title 12, of the Code of 1897, and amendments thereto, to the. county treasurer, and such other taxes, fines and penalties that are imposed by this ordinance to the city treasurer filing a duplicate receipt for all such taxes, fines and penalties with the city auditor in advance promptly, as by law provided, that is to say, taxes payable to the county treasurer shall be paid quarterly in. advance.

All persons, firms or corporations engaged in the business of selling intoxicating liquors in Ottumwa, Iowa, at retail, shall pay a monthly, additional tax of seventy-five dollars ($75.00) per month in advance on or before the first day of the month. In the event of failure of said person, firm or corporation to pay said monthly tax in advance, the chief of police of the city of Ottumwa shall close said saloon as provided by law without further direction from the city council. . . .

Sec. 5.   The failure on the part of any person, partnership, or corporation holding a resolution of consent for the purpose provided herein to pay the taxes provided by

law quarterly in advance and to the city treasurer the additional monthly tax as herein provided and file a duplicate receipt for such payment with the city auditor, shall work an immediate forfeiture of the resolution of consent, and the further right of such person or party to do business under the provisions of this ordinance.

And from the said ordinance we also make the following quotations:

No minor, drunkard, or intoxicated person shall be allowed in the room; and no sales of intoxicating liquors shall be made to any minor, drunkard or intoxicated person, or knowingly to any person who has taken any of the so-called cures for drunkenness. . . .
Sec. 13. Every person, firm or corporation who shall sell spirituous liquors in less quantities than one gallon, or malt liquors in less quantities than one case of two dozen quarts or three dozen pints, or one quarter of a barrel to any person, firm or corporation, at any one time shall be denominated a retail liquor dealer.

Relators strenuously contend that the findings are without support in the testimony, and that the trial court was in error in its conclusions of law as to the place where certain sales of liquor were made, and also erred in holding that any of the sales made by relators were illegal, because they failed to pay the tax imposed by the city council. Now, while the findings of fact made by the trial judge are not conclusive, they are entitled to great weight, especially where, as in this case, the testimony is conflicting, and much depends upon the credibility of the witnesses. In such cases, where the witnesses are before the trial judge, his advantageous position in discovering the truth should not be disregarded. We shall not consider each and every finding of fact made by the trial judge, for if any one is sustained by the record the final conclusion must be affirmed.

Relators claim to have been wholesale dealers in liq-

uors, that they had no bar, employed no bartenders, and served no intoxicating liquors in their building to be drunk therein, and the trial court did not find that any illegal sales were made in the building, save to a minor by the name of Halstead.  He did find, however, that relators took orders by telephone, which were filled by delivery to the purchasers at points remote from where the business was being conducted, and that relators received payment for the liquors at the place of delivery.  He also found that relators did not pay the tax imposed by the city ordinance from which we have quoted.  Now, if it be found that nonpayment of the city tax made relators' sales illegal, or if it be determined that they made sales at a place other than where authorized, then the judgment of the trial court should be affirmed.  The provisions of the so-called "mulct law." with reference to these matters, are as follows:

In any city, including cities acting under special charters, of five thousand or more inhabitants, no proceedings shall be maintained against any person who has paid the last preceding quarterly assessment of mulct tax, nor against any premises as a nuisance on the account of the selling or keeping for sale therein or thereon, by such person, of such liquors, provided the following conditions are complied with. . . .

The person appearing to pay the tax shall file with the county auditor a certified copy of a resolution regularly adopted by the city council, consenting to such sales by him. . . .

Said selling or keeping for sale of intoxicating liquors shall be carried on in a single room having but one entrance or exit, and that opening upon a public business street. . . .

No minor, drunkard or intoxicated person shall be allowed in the room, and no sales of intoxicating liquors shall be made to any minor, drunkard or intoxicated person.  (Section 2448, Code Supp. 1907.)

For the purpose of protecting the property of the municipality and its inhabitants, and of preserving peace and

good order therein, cities and towns and cities acting under special charters shall have power to levy and collect additional taxes, and to adopt from time to time rules and ordinances for further regulating and controlling such traffic, not in conflict with the provisions of this chapter. (Section 2455, Code.)

I. By the express provisions of section 2455 of the Code, cities and towns have power to levy and collect additional taxes, and to adopt rules and regulations for further regulating and controlling such traffic, provided they do not conflict with other provisions of the law. No contention is made that the city ordinance from which we have quoted is invalid because in conflict with the general law upon the subject; but it is said that, although relators failed to pay the additional city tax and so conducted the business as to make themselves retail dealers, nevertheless the sales so made after nonpayment of the city tax were not in violation of law and did not amount to a contempt of court. It will be noticed that the ordinance of the city provides that, if the liquor dealer fails to pay the additional city tax quarterly in advance as other taxes, this should work an immediate forfeiture of the resolution of consent. There is nothing contrary to law in this, and it in fact carries out the spirit, if not the letter, of the legislative enactments. Relators concede that they did not pay the city tax as required, but contend that under the doctrine of *City of Ottumwa v. Hodge,* 112 Iowa, 430, they were not required to do so. That case does not in any manner support their contention. If there be anything material in what is said in that case, it supports our conclusion here, to the effect that the city had the right to impose the additional tax, and to make its own provision with reference thereto. As failure to pay the tax *ipso facto* worked a forfeiture of the resolution of consent, all sales there-

<span style="font-variant: small-caps">1. Intoxicating liquors: illegal sales: contempt.</span>

after made were invalid and in violation of the injunctional decree.

II.    The trial court also found that sales were made away from the building wherein relators were authorized to make sales.    The finding has this support in the testimony.    Both private parties and keepers of mulct saloons telephoned orders for liquor to the relators.    Relators filled these orders by delivering goods to the purchasers, and both then and thereafter collected the purchase price at the homes or places of business of the purchasers.    That these sales were in fact made at the place of delivery, or where the purchase price was paid, is too clear for argument.    See, as supporting this rule, *Goodrich v. Wheeler,* 145 Iowa, 289; *Cameron v. Fellows,* 109 Iowa, 534; *Carter v. Miller Brewery Co.,* 111 Iowa, 457; *Bartel v. Hobson,* 107 Iowa, 644; *Carter v. Bartel,* 110 Iowa, 211; *Brewery Co. v. De France,* 91 Iowa, 108; *Welch v. Spies,* 103 Iowa, 389.    Nothing said in *Hamilton v. Brewing Co.,* 129 Iowa, 181, runs counter to these views, and the distinction between that case and this is so clear that we need not take the time to point it out.

*2. SAME: place of sale.*

III.    If it were necessary, we should be compelled to find that the third and fourth findings of the trial court also have sufficient support in the testimony.    Our conclusions are that there was ample testimony to justify the findings already referred to, and that relators were each guilty of the contempt charged.

Defendant has filed motions in each case asking for the taxation of attorney's fees.    These motions are each sustained, and it is ordered that there be taxed in each case, as part of the costs, the sum of $25 as compensation to defendant's attorney for services rendered on the appeal.

The writs will each be quashed, and the judgment in each case is *affirmed.*